LEVIN METALS CORPORATION AND SUBSIDIARIES: SEQUOIA NAVIGATION COMPANY, LMC PRECIOUS METALS CORP., MARTIN HANNUM INC., MMC, INC., PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5309-85.　　　Filed February 14, 1989.

*Ted C. Krumland,* for the petitioners.
*Irvin W. Fegley,* for the respondent.

OPINION

SWIFT, *Judge:* Respondent determined deficiencies in petitioners' consolidated Federal income tax for their taxable year ending June 30, 1979, in the amount of $82,587. Respondent also disallowed various investment tax credits claimed on petitioners' consolidated Federal income tax return for their taxable year ending June 30, 1980, in the amount of $394,288, which credits were claimed as carryback credits to petitioners' 1979 taxable year.

After settlement of some issues, the only issue remaining for decision is whether certain equipment purchased in 1979 and 1980 qualifies for energy tax credits as recycling

equipment under sections 48(1)(2)(A)(iv) and 48(1)(6).[1] This issue was submitted fully stipulated to the Court for opinion under Rule 122.

Levin Metals Corp. (LMC) is a California corporation whose principal place of business is San Jose, California. The equipment at issue was purchased by LMC, and all issues relating to the other consolidated corporations have been settled.

Among its activities in 1979 and 1980, LMC operated a recycling business that involved purchasing, sorting, processing, and selling ferrous and nonferrous scrap metals and other solid wastes. In 1979 and 1980, LMC purchased and placed in service transportation equipment such as trucks, trailers, tractors, and piggyback rolloffs. A piggyback rolloff is a portable metal receptacle used for collecting scrap materials. The equipment LMC purchased was used to transport scrap metal from collection sites to LMC's plant facilities located in San Jose, Richmond, Redwood City, Sacramento, and Stockton, California, and to transport scrap metal within and between LMC's own facilities.

The parties have stipulated that in 1979, approximately 94 percent of the use of the transportation equipment involved transporting scrap metal within and between LMC's facilities and 6 percent of the use of the equipment involved transporting scrap metal from collection sites to LMC's facilities. In 1980, these respective figures were approximately 64 and 36 percent.

LMC's scrap metal business typically operated as follows. After acquisition at one of LMC's facilities (or at one of the off-premise collection sites and transportation to one of LMC's facilities), the scrap metal would be sorted or subjected to a recycling process, which commonly would include compaction, baling, chopping, and shredding. Thereafter, the scrap metal typically would be transported to one of LMC's other facilities for further processing and for sale.

The parties have agreed that if LMC's transportation equipment qualifies as recycling equipment, LMC is entitled to additional energy tax credits in the amounts of $82,587

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

for its 1979 taxable year, and $73,481 for its 1980 taxable year.

During 1979 and 1980, in addition to the regular investment tax credits that were available under sections 38 and 48, an energy tax credit was available with respect to the acquisition costs of, among other things, certain statutorily defined recycling equipment. Section 48(l)(6) defined recycling equipment as follows:

(6) RECYCLING EQUIPMENT.—

    (A) IN GENERAL.—The term "recycling equipment" means any equipment which is used exclusively—

        (i) to sort and prepare solid waste for recycling, or

        (ii) in the recycling of solid waste.

In the above statutory language, a distinction is made between the preparation of solid waste for recycling (i.e., sorting and preparing), see clause (i), and the actual recycling of the solid waste, see clause (ii). Equipment used exclusively in the recycling of solid waste qualifies as energy property under clause (ii), but only two specified types of equipment used exclusively before the actual recycling process begins qualify as energy property under clause (i) (namely, equipment used to sort and/or prepare the solid waste for recycling).

Petitioners argue that LMC's use of the equipment in question qualifies as a use of the equipment for sorting and/or preparing solid waste for recycling. Respondent argues that although LMC's use of the equipment for transportation of scrap metal may qualify as a partial use of the equipment for recycling or for sorting and preparing the scrap metal for recycling, the equipment also was used for the transportation of pre-recycled scrap metal from collection locations to LMC's plant facilities and to transport scrap metal that was in the process of being recycled from one of LMC's facilities to other LMC facilities. Respondent argues that such transportation uses do not qualify as a use of the equipment for recycling, nor for sorting or preparing the scrap metal for recycling, and, therefore, that LMC's transportation equipment was not used *exclusively* for the statutorily specified qualified uses. For reasons explained below, we agree with respondent.

Section 48(l)(6) provides two specific exclusions from the definition of recycling equipment. See sec. 48(l)(6)(B).[2] As explained, however, these two exclusions are not the only limitations on the qualification of equipment as recycling equipment under section 48(l)(6). The use of the word "exclusively" in section 48(l)(6)(A) and of the words "sort" and "prepare" in clause (i) thereof clearly suggests other limitations on the qualification of equipment as recycling equipment. Equipment used by a company in the business of recycling solid waste but not used exclusively in the recycling process or in the sorting and preparing of solid waste for recycling also does not qualify as recycling equipment.

The words "sorting" and "preparing" in their customary usage do not include transportation of solid waste material. The legislative history of section 48(l)(6) supports this reading of the statutory language. The relevant provisions of section 48 were enacted as part of the Energy Tax Act of 1978, Pub. L.95-618, 92 Stat. 3175, 3195-3198. Both the House and Senate Reports concerning Pub. L. 95-618, *supra,* expressly describe transportation equipment used to transfer waste material between different locations as being excluded from the definition of recycling equipment. The Senate report explained—

transportation equipment which is integrally related to the actual recycling equipment should also be eligible for the credit. This would include, for example, equipment to load solid waste into a sorting or preparation machine and also a conveyor belt system which transports the solid waste materials from separation equipment to another machine in the recycling process. *Transportation equipment, such as trucks, which transfer solid wastes between geographically separated sites, e.g., between collection points and recycling plants, will not be recycling equipment.* [S. Rept. 95-529, at 83 (1978), 1978-3 C.B. (Vol. 2) 275. Emphasis added.]

See also H. Rept. 95-496 (Part III) at 123 (1978), 1978-3 C.B. (Vol. 2) 185.

Petitioners argue that the failure of Congress to expressly incorporate into the statutory language of section 46(l)(6)(A)

---

[2]Sec. 48(l)(6)(B) provides as follows:

(B) CERTAIN EQUIPMENT NOT INCLUDED.—The term "recycling equipment" does not include—
   (i) any equipment used in a process after the first marketable product is produced, or
   (ii) in the case of recycling iron or steel, any equipment used to reduce the waste to a molten state and in any process thereafter.

the above limitation on transportation equipment indicates that Congress rejected this limitation. We disagree, and believe that the above explanation from the legislative history is a strong indication that Congress intended that transportation equipment used for the specified prohibited purposes would not qualify for energy tax credits (i.e., it would not be regarded as used for recycling, nor for sorting or preparing solid waste for recycling).

Accurately reflecting this legislative history and carrying out its mandate under section 38(b)[3] to promulgate regulations under sections 38 and 48, the Treasury in 1980 proposed, and in 1981 adopted, section 1.48-9(g)(4) and (6), Income Tax Regs. The regulations provide that on-site transportation equipment used as an integral part of the recycling, sorting, or preparing processes associated with recycling solid waste will be regarded as energy property but that other transportation equipment will not so qualify. The regulations provide, in relevant part, as follows:

Sec. 1.48-9(g). *Recycling Equipment—* * * *

\* \* \* \* \* \* \*

(4) *On-site related equipment.* Recycling equipment also includes on-site loading and transportation equipment, such as conveyors, integrally related to other recycling equipment. This equipment may include equipment to load solid waste into a sorting or preparation machine and also a conveyor belt system that transports solid waste from preparation equipment to other equipment in the recycling process.

\* \* \* \* \* \* \*

(6) *Ineligible equipment.* Transportation equipment, such as trucks, that transfer solid waste between geographically separated sites (e.g., the collection point and the recycling point) is not eligible. * * *

Contrary to petitioners' argument, the above regulations do not improperly exclude transportation equipment from qualifying as energy property. The regulations accurately reflect the intent of Congress, and are a reasonable interpretation of the statutory provisions.

Petitioners argue that if the regulations are found to be valid, they should not have retroactive effect with respect to equipment purchased prior to the promulgation in 1981.

---

[3]Sec. 38(b) provides as follows:

SEC. 38(b). REGULATIONS.—The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this section and subpart B [which includes section 48].

Having concluded that under section 48(l)(6), as originally enacted, transportation equipment partially used to transport solid waste from collection sites to recycling sites or from one recycling site to another does not qualify as recycling equipment, there is no basis for limiting the retroactive effect of the regulations. See also sec. 7805(b).

For the reasons set forth above,

*Decision will be entered under Rule 155.*